THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. GEORGE LUTZOW, Plaintiff in Error.

*Opinion filed June 16, 1909.*

1. CRIMINAL LAW—*a verdict will not be disturbed on the facts unless clearly wrong.* A verdict of guilty will not be set aside by the Supreme Court on the facts unless the finding is so palpably against the weight of the evidence as to indicate that the verdict was based upon passion or prejudice upon the part of the jury.

2. SAME—*competency of evidence cannot be questioned if there was no ruling by the court.* The competency of evidence admitted without objection cannot be questioned in a court of review where no ruling of the court as to its competency was sought or made.

3. SAME—*when refusal to discharge a juror is proper.* Refusal to discharge a juror after part of the evidence in a criminal case has been heard is proper, although the accused objected to proceeding with the juror on account of the "agitated condition of his mind," induced by fear of the possible consequences of his ineffectual attempt to have himself excused from further service as a juror in accordance with the demand of his wife.

4. SAME—*a witness whose name is not endorsed on indictment may be examined.* It is not an abuse of the trial court's discretion to permit a witness to be examined whose name was not endorsed on the indictment where the omission to endorse the name on the indictment was unintentional, and there is no claim that the witness testified to anything which took the defendant by surprise.

5. RAPE—*when refusal of instruction as to absence of outcry or complaint is not error.* It is not error, in a rape case, to refuse an instruction permitting the jury to consider the fact, if proven, that the prosecuting witness made no outcry or immediate complaint, where the prosecuting witness is a child only seven years old, and the instructions given fully authorize the jury to consider all the facts and circumstances proven on the trial, both by the defendant and the prosecution, and to acquit the defendant if they have a reasonable doubt of his guilt after considering all the evidence.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding.

N. J. ALDRICH, and THEODORE WORCESTER, for plaintiff in error.

W. H. STEAD, Attorney General, and WILLIAM J. TYERS, State's Attorney, (JOHN R. POWERS, and JUNE C. SMITH, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

At the May term, 1908, of the circuit court of Kane county, George Lutzow was convicted of the crime of rape alleged to have been committed upon the body of Helen Cochrane, a female under the age of sixteen years. After overruling motions for a new trial and in arrest of judgment the court sentenced the prisoner to imprisonment in the penitentiary for a term of fifteen years, in accordance with the verdict of the jury. The present writ of error is sued out for the purpose of having this judgment reviewed by this court.

The alleged errors which are urged as reasons for reversing the judgment below are: (1) The insufficiency of the evidence to warrant a verdict of guilty; (2) the admission of improper evidence; (3) that juror Klabunde was improperly retained upon the jury; (4) the error in permitting the witness Held to testify without his name having been endorsed on the indictment; (5) the refusal of the court to give instructions Nos. 1, 3, 6 and 7 requested by the plaintiff in error. These alleged errors will be considered in the above order.

*First*—Plaintiff in error first contends that the evidence is insufficient to sustain the verdict of guilty and that the trial court erred in refusing a new trial for this reason.

In the fall of 1907 Charles A. Cochrane, with his wife, Pearl, and daughter, Helen, resided at No. 224 Chicago street, in the city of Elgin, Kane county, Illinois. Mr. Cochrane was a laborer and worked at the case factory in Elgin. No. 224 Chicago street was a three-story building, a part of which was occupied by the Cochrane family as a residence, the remainder of which was let by the Cochranes to roomers. Plaintiff in error was about fifty-three years

of age at the time of the commission of the alleged offense. He was unmarried, and at the time was engaged as a representative of a fraternal organization known as "The Toilers." About one week before Thanksgiving, 1907, plaintiff in error procured a room on the third floor of the rooming house at No. 224 Chicago street, which he continued to occupy until December 27, 1907, when he procured a room elsewhere. About two o'clock P. M. on December 24, 1907, Helen Cochrane went to plaintiff in error's room. As to what occurred after she entered the room there is a sharp conflict in the testimony of the plaintiff in error and that of the girl. Without going into details, Helen Cochrane testifies that after she went into plaintiff in error's room he locked the door and threw the prosecutrix down on his bed and ravished her; that she told him to stop,—that he was hurting her,—and that he said, "Never mind." Plaintiff in error denied the entire transaction, except the fact that the girl was in his room and that the door was closed, and in addition to his denial plaintiff in error proved that he was a man of good character at the time this charge was made. In this condition of the direct testimony it becomes necessary to determine to what extent, if any, the opposing witnesses to the main fact are corroborated.

Mrs. Pearl Cochrane testified that on the afternoon of the day the offense is alleged to have been committed she came home between two and three o'clock and upon arriving she smelled smoke; that plaintiff in error had an oil stove in his room and that she went up to see what was causing the smoke; that she went up and rapped on his door, and after quite a little bit plaintiff in error opened the door, and she asked him how came the room all smoke and why he had locked the door. Plaintiff in error replied that he locked the door to keep the smoke out of the hall. She turned the stove down, and then, upon looking around, discovered her daughter standing there, and said to her, "What are you doing here?" The girl replied, "I just came

in here," and plaintiff in error said, "She just came in to talk to me." Mrs. Cochrane then turned and walked down stairs and Helen followed her. Mrs. Cochrane had received word that day that her father, who lived in Indiana, was seriously ill, and she left for Indiana that evening and did not return until January 2. During her mother's absence Helen stayed at the home of her aunt, Kate Robinson. Helen Cochrane was at the time of this occurrence seven years of age. Her father testifies that on Saturday night after Christmas, which was the 28th day of December, Helen complained to him that she was not feeling well and wanted to go home, and that he took her home that evening and examined her and found her private parts inflamed and sore. He gave her a bath and applied talcum powder and put her to bed. He notified his wife by letter of Helen's condition. He continued to bathe her until his wife returned, January 2. The condition of the child did not improve. After the mother came home she applied domestic remedies, but without success. Mrs. Cochrane testified that on the 18th of January, when she was bathing the child, she asked her what, if anything, plaintiff in error did to her when she was up-stairs in his room with the door locked, and that after some hesitation Helen then related to her mother what had happened. On the next day Dr. Brown examined the child and discovered symptoms of gonorrhea, and on January 22 she was examined by Drs. Bell, Schumeyer and Brown and found to be suffering from a well developed case of gonorrhea. On January 23 plaintiff in error was arrested and charged with this offense. He was then examined by physicians, and it was found that he was not suffering from gonorrhea nor were there any indications of that disease. An examination was then made of the room in which the offense is alleged to have been committed. Two shirts were found in this room, which the plaintiff in error admits were his, from each of which a piece about six inches square had been torn. The detached

pieces of the shirts were found in the room. These pieces were found, upon examination, to have upon them the germs of gonorrhea. James W. Younger, city marshal of Elgin, testified that he had a conversation with plaintiff in error on the day he was arrested and that he said to him, "You are up against a serious charge; what is there about it?" He said, "There is nothing to it." Witness told him, "This is a pretty serious matter; you are charged with raping this little girl," and plaintiff in error said, "I did not rape her," but he admitted to the marshal that the little girl was in his room while the door was locked, and said that the girl came in and made "immoral proposals" to him; that plaintiff in error said that the little girl sat or laid back on the bed and made "immoral proposals" to him. Upon being asked by the marshal why he had torn the pieces from his shirts, plaintiff in error said he had used them to wipe his shoes.

The foregoing is a general outline of the most important facts testified to on the trial. Whether the evidence was sufficient to warrant a verdict of guilty was in the first instance to be determined by the jury. In criminal cases the rule which has uniformly been applied by this court is, that the verdict of a jury will not be set aside unless the finding is so palpably against the weight of the evidence as to indicate that the verdict of the jury is based upon passion or prejudice. (*Cronk* v. *People,* 131 Ill. 56; *Steffy* v. *People,* 130 id. 98; *People* v. *Deluce,* 237 id. 541.) There is nothing in this record to indicate that this verdict is not the result of the deliberate judgment of the jury after having seen and heard the several witnesses testify. While the little girl's testimony is directly contradicted by the plaintiff in error, still, in view of the corroborating circumstances, we think the jury were warranted in believing the testimony of the girl.

*Second*—Plaintiff in error contends that the judgment should be reversed because irrelevant and incompetent tes-

timony was introduced on behalf of the People. The evidence as to which complaint is first made relates to the shirts, and pieces thereof, that were found in plaintiff in error's room and identified as belonging to him. Plaintiff in error admitted on his cross-examination that the two shirts exhibited to the jury were his property. He denied, however, any knowledge of the pieces. Other witnesses testified that the pieces exhibited to the jury were parts of the two shirts above referred to. Plaintiff in error also complains of the following evidence given by Dr. Thomas L. Dagge: "Q. In your study of the books mentioned, have you become familiar with any theory concerning a natural cure for gonorrhea that is known to laymen?—A. Yes. It is mentioned by some writers. It is supposed by some that a man affected with gonorrhea, by having intercourse with a virgin will immediately lose their gonorrhea,—that their disease will thus be cured. This is a superstition that is dwelt upon in some of the writings." The attorneys who represented plaintiff in error in this court did not represent him in the trial below. The foregoing evidence was not objected to in the court below. There was no ruling of the trial judge upon its competency. Had it been objected to and the objection overruled, an exception to that ruling would properly present the question for review in this court. Where the defendant permits evidence to go in without objection there is nothing preserved for review. (*People* v. *Weston,* 236 Ill. 104.) The same observations will apply to the complaint in regard to the statements of the prosecutrix made to her mother and testified to by the mother.

*Third*—It is next contended by plaintiff in error that the court erred in refusing to discharge juror Klabunde after the trial had been entered upon. This contention is based upon the following circumstances: After the jury had been empaneled and sworn and considerable evidence heard, it appears from the record that the court had learned during the noon recess that juror Klabunde was anxious to

be excused from further service. Upon the meeting of the court in the afternoon the judge asked this juror if there was any reason why he could not go on with the trial, to which the juror replied, "I would rather be home with my wife." The court then inquired of the juror what the condition of his wife was when he left home that morning. The juror said: "That is not the reason; she was sick enough." The court then asked if she was under the care of a doctor, and the juror replied that he did not care to say in the presence of everybody; and thereupon the court asked counsel on both sides, and the juror, to step into the judge's chambers, and thereupon the judge, in the presence of counsel for the prisoner and the People, held further conversation with the juror, the result of which was to learn that the juror's wife was not sick at all but that she objected to his serving on the jury and demanded that he be excused. The juror was very anxious to oblige his wife, and manifested some agitation because he said that he was afraid that if he did not go home that his wife would leave him and that he would lose her. The trial judge refused to recognize the supposed gravity of the situation and decided to proceed with the trial of the case. Plaintiff in error objected to proceeding with the juror on account of the "agitated condition of his mind." We fail to see, in this circumstance, anything that affected the competency of Mr. Klabunde to discharge his duty as a juror. All that the circumstance amounted to was, that Klabunde's wife was angry because she did not believe that her husband had tried in good faith to get excused. We think the trial court did right in disregarding the matter and proceeding with the business of the court.

*Fourth*—The plaintiff in error objected to the testimony of witness Held because his name was not endorsed on the copy of the indictment furnished him. When this witness was called to the stand this objection was made, and the court inquired of the State's attorney why the witness'

name had not been endorsed on the indictment, and the State's attorney said that he had furnished a list of the witnesses to counsel for plaintiff in error and supposed that Held's name was among them; that if his name was omitted it was an inadvertence and not intentional on his part. Thereupon the court permitted the witness to be sworn and examined. There is no claim by plaintiff in error that there was anything in the testimony of this witness calculated to take him by surprise. His testimony was merely cumulative and parts of it quite favorable to the plaintiff in error. It is within the discretion of the trial court to allow witnesses to be examined in a criminal case whose names are not endorsed on the indictment. (*Gore* v. *People,* 162 Ill. 259; *Hauser* v. *People,* 210 id. 253.) There was no abuse of discretion in this regard.

*Fifth*—It is finally contended by plaintiff in error that there was prejudicial error committed by the refusal of the court to give instructions Nos. 1, 3, 6 and 7. Instruction No. 1 which was refused told the jury that the jury might take into consideration the fact, if proven, that the prosecuting witness made no outcry and did not immediately complain of the offense to others, together with all of the other evidence, in determining the guilt or innocence of the accused. In cases of this kind, where the prosecutrix is old enough to appreciate the nature of the offense that has been committed upon her, it is usually regarded as a suspicious circumstance if she fails to make complaint of her mistreatment as soon as she has a reasonable opportunity to do so. But we do not think that the failure of a child seven years old to make complaint should be viewed, in the eye of the law, the same as if she were a woman of judgment and discretion. The failure of the little girl to make immediate complaint does not, in our opinion, indicate anything except that she did not then appreciate that she had been injured. The evidence shows that she did complain to her father of her injuries on the Saturday following, but we doubt

whether in the mind of this child her suffering was connected with what had occurred four days before. The giving of the instructions asked, under the circumstances of this case, might have led the jury to attach undue importance to the circumstance that the little girl did not tell anyone what had happened to her until questioned by her mother on the 18th of January. The mere fact that the court did not give this instruction did not exclude from the jury the consideration of any of the facts or circumstances proven on the trial. By other instructions given, the jury were directed to "take into consideration all of the evidence elicited from the defendant's witnesses as well as that detailed for the prosecution, and if, after a full and dispassionate consideration of all of the evidence in the case, the jury still entertain any reasonable doubt as to whether the defendant committed the crime as charged in the indictment," then the jury were directed to acquit the defendant. With these instructions given to the jury we do not think it was error to refuse to give instruction No. 1. Instruction No. 3 which was refused related to the presumption of innocence and was a proper instruction, but the same point is covered by instruction No. 1 given at the request of the plaintiff in error. Instructions 6 and 7 related to the question of a reasonable doubt. The jury were sufficiently instructed upon the subject of reasonable doubt by other instructions, and it was not necessary that the court should reiterate the same thing in other instructions. There was no error in refusing any of the instructions complained of.

One other matter is referred to in the brief of plaintiff in error which has had our consideration, but we do not deem it of sufficient importance to require discussion in this opinion.

We fail to find any reversible error in this record. The judgment of the circuit court of Kane county will be affirmed.

*Judgment affirmed.*